JAMES W. PEARL v. CHARLES W. HALL.

*Specific performance—Evidence.*

The only question involved in this case is one of fact. The testimony was taken in open court, and no reason is seen for reversing the finding of the court.

Appeal from Berrien. (O'Hara, J.) Argued February 14, 1894. Decided February 27, 1894.

Bill to enforce the specific performance of a land contract. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*A. Plummer* and *George S. Clapp,* for complainant.
*Thornton Hall,* for defendant.

GRANT, J. Complainant and defendant made a land contract May 10, 1892, by which defendant agreed to sell and convey to complainant a lot in Benton Harbor. The price was $1,000, which was agreed to be, and was, paid at the date of execution. Defendant reserved a house and its foundation walls, which complainant agreed to move to a lot which defendant owned, between Bush's and Gowens' lots, on the same street. The moving of the house and foundation was a part of the consideration. One Armstrong occupied the house as a tenant, whose lease expired the following January, and the contract was subject to this leasehold interest. It was subsequently agreed by parol that complainant might move the house before the expiration of the lease, if he could so arrange with Armstrong. This arrangement was made, and complainant made a contract with Armstrong to move the house.

99 MICH.—14.

Meanwhile, defendant had sold the lot onto which the house was to be moved.  It is claimed by the complainant that he moved it to another lot, designated by defendant, while it is claimed by the defendant that it was not moved onto the lot designated by him.  Complainant filed a bill for the specific performance of the contract, alleging full compliance on his part.

Complainant testified that, after the lot between Bush's and Gowens' was taken possession of by other parties, so that it was impossible to move the house onto it in accordance with the contract, the defendant indicated to Mr. Armstrong that he would have it moved onto a lot fronting on Colfax avenue, next to Porter's grove, and that he then made the contract with Armstrong to remqve it there, and place it on a suitable foundation; that Armstrong then wrote to Mr. Hall to know where, on the lot, he would have it placed; that Mr. Hall came, and then decided to have it moved to the edge of a bluff, a considerable distance from Colfax avenue, rendering it necessary to move it across a piece of low ground, which would entail some additional expense; that Mr. Armstrong and a Mr. Potts, who was also interested in the moving contract, informed complainant of the defendant's directions, but he declined to bear the extra expense, but said that, if they could make any suitable arrangement with Mr. Hall, they could move the house to suit him.  No such arrangement was made, and complainant placed the house upon the other lot, and put the foundation under it, against the written protest of the defendant.  Mr. Armstrong testified that he had asked the defendant where he was going to move the house, and that he replied, "Onto the lot next to Porter's grove."  Afterwards, and after he had made the contract for moving, he wrote to Mr. Hall "to know the stakes,—to get the corners; how far he wanted it set

back from Colfax avenue." In reply to this letter Mr. Hall came, and then told him that he wanted it over on the bluff. He then informed Mr. Hall of his contract with Mr. Pearl. At this time the house was on rollers, and was being moved. Further evidence on the part of the complainant tended to show that defendant declined to pay any of the extra expense of the moving.

Defendant testified that he told complainant that there was likely to be some trouble about the lot described in the contract; that he would furnish him a place close by; that complainant said it would be all right as long as it was no farther to move it; that he told complainant he would stake out a place that would be near Porter's grove, but back farther from the street; that he heard no more in regard to it till he received the letter from Mr. Armstrong; that he offered to pay the extra expense; and that the place where he directed it to be moved was at no greater distance from the lot sold than was the lot between Bush's and Gowens.' Before bringing suit complainant tendered to defendant $8, which is conceded to be the difference in cost between moving the house to the lot designated in the contract and to the lot where it was finally placed.

The determination of the controversy depends upon a question of fact, viz., whether the lot near Porter's grove was designated by defendant, and accepted by complainant, as the place to which the house was to be moved. If this was agreed to, then defendant could not change the location so as to involve a greater expense to complainant. That complainant so understood it is evident from his contract with Armstrong. Armstrong's testimony is quite positive that defendant did make such designation, and that he and complainant acted upon it, and he appears to have been disinterested. The testimony was

taken in open court, and we see no occasion to reverse the finding of the circuit court.

Decree affirmed, with costs.

The other Justices concurred.